# In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 02-3879, 02-1124 & 02-1143

ADMINISTRATIVE COMMITTEE OF THE
WAL-MART STORES, INC. ASSOCIATES'
HEALTH AND WELFARE PLAN,

*Plaintiff-Appellant/Cross-Appellee*,

*v.*

CLARA VARCO,

*Defendant-Appellee/Cross-Appellant.*

———————————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 8277—**Joan Humphrey Lefkow**, *Judge.*

———————————

ARGUED SEPTEMBER 10, 2002—DECIDED JULY 29, 2003

———————————

Before FLAUM, *Chief Judge*, and BAUER and MANION,
*Circuit Judges.*

MANION, *Circuit Judge.*

## I.

Clara Varco, a Wal-Mart employee, incurred medical
expenses due to a car accident, which were paid by Wal-
Mart's health and welfare benefit plan. After Varco recov-
ered damages for her injuries in a state court action, the
Wal-Mart Plan Committee sought restitution for the med-
ical expenses it had paid from Varco and her attorney,

Laurence Dunford. The district court granted a preliminary injunction in favor of the Committee, preventing Varco and her attorney from disbursing those funds or further adjudicating the matter in state court. Varco and Dunford appealed the preliminary injunction. The district court then granted summary judgment in favor of the Committee, ordering that the medical expenses be remitted to the Committee, less its proportional share of Dunford's attorney's fees pursuant to Illinois' common fund doctrine. The Committee appealed the order diminishing its reimbursement due to the application of the common fund doctrine. The cases were consolidated. We affirm in part and reverse in part.

## II.

On September 24, 2000, Clara Varco sustained injuries in an automobile collision in Orland Park, Illinois. At that time she was employed by Wal-Mart Stores, Inc. ("Wal-Mart"), which provides its employees benefits through the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan (the "Plan"). The Plan is a self-funded employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461 and administered by the Administrative Committee of the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan (the "Committee"). Pursuant to the terms of the Plan, $18,865.72 in medical benefits was immediately paid on behalf of Varco following the accident.

Significantly, for the purposes of appeal, the Plan includes a provision stating that the Committee has a right to "recover or subrogate 100 percent of the benefits paid or to be paid by the Plan on your behalf and/or your dependents to the extent of . . . [a]ny judgment, settlement or any payment made or to be made, relating to the accident, including but not limited to other insurance." The Plan

further provides that it "does not pay for nor is responsible for the participant's attorney's fees. Attorney's fees are to be paid solely by the participant."

The procedural intricacies of this case began when Varco retained Laurence J. Dunford to represent her against Kristopher Lapsis, the other driver responsible for her injuries, and to make a claim against All-State Insurance Company, her insurer. She contracted with Dunford to pay him a contingency fee of one-third of any recovery. Varco then filed a tort action in Illinois state court against Lapsis. In October 2001, in contemplation of settlement, Varco sought adjudication of various liens on the lawsuit, including that of the Plan. In response, the Committee asked the state court to postpone adjudication of its lien and filed a notice for removal in federal court. The district court promptly remanded the case back to state court finding no subject matter jurisdiction. *Varco v. Lapsis*, 172 F. Supp. 2d 985, 988-92 (N.D. Ill. 2001).[1] Not content with this course of events, the Committee filed a second action in federal court on October 29, 2001, asserting claims under § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3), for "appropriate equitable relief" including an injunction, declaration of rights, specific performance, imposition of a constructive trust and restitution against Varco and Dunford. The Committee also moved to have related matters in state court stayed and Varco and Dunford enjoined from proceeding with further state court litigation.

While these suits were proceeding, Varco, through her attorney, received settlement proceeds of $100,000. The settlement proceeds were disbursed by Dunford to Varco,

---

[1] In remanding the case, Judge Alesia presciently noted that "there may be federal jurisdiction over the Wal-Mart Committee's independent action if the complaint states a claim under ERISA's civil enforcement provision, § 502(a)(3)." *Lapsis,* 172 F. Supp. 2d at 991 n.7.

himself, and other lienholders. In anticipation of litigation, Varco established a reserve bank account in her name in the amount of $34,034.55 (the initial amount the parties believed to have been spent in medical bills under the Plan) to pay the Committee when the courts resolved the question of what amount was due and owing. Dunford, meanwhile, took his full portion of attorney's fees from the settlement fund ($22,000) when he disbursed the monies, thereby leaving all of the disputed monies in Varco's possession. *Administrative Committee of Wal-Mart Stores, Inc. v. Varco*, No. 01 C 8277, 2002 WL 31189717 *2, n. 5 (N.D. Ill., Oct. 02, 2002) ("Varco III"). At the end of December 2001, Dunford and Varco returned to state court and filed a motion to adjudicate Wal-Mart's lien. In response, the Committee filed yet another motion in federal court pursuant to the Anti-Injunction Act, 28 U.S.C. § 2283, the All Writs Act, 28 U.S.C. § 1651, and "the Princess Lida doctrine" to enjoin the state court from adjudicating the liens.

The Committee was successful in both of its motions before the district court. On December 24, 2001, it obtained a temporary restraining order from the district court and a preliminary injunction preventing Varco and Dunford from disbursing the $34,035.55 until "the rights of [the Committee] have been determined by [the district court]."*Administrative Committee of Wal-Mart Stores, Inc. Associates' Health and Welfare Plan v. Varco*, No. 1:01-CV-8277, 2001 WL 1772318, *3 (N.D. Ill., Dec 21, 2001) ("Varco I").[2] On January 14, 2001, the court entered an injunction barring Varco from proceeding with further

---

[2]  During the course of the litigation, the parties discovered that Blue Cross/Blue Shield of Illinois, the Plan's third-party administrator, was able to obtain discounts on Varco's medical expenses. As a result, the court granted Varco's motion to amend the preliminary injunction by reducing the amount subject to it to $18,865.72.

adjudication of the Committee's lien in state court. *Administrative Committee v. Varco & Dunford*, No. 01 C 8277, 2002 WL 47159, *3-4 (N.D. Ill. Jan. 14, 2002) ("Varco II"). The court also dismissed all of the Committee's claims for equitable relief with the exception of its "claim for the imposition of constructive trust on particular property in the hands of the defendants and for the pendent state law claims." *Id.* at *4. After the district court stayed the state court proceedings and enjoined Dunford and Varco from proceeding in state court, the Committee removed for the second time Varco's personal injury action, as all of the liens on the settlement, except for the Committee's, had been paid. The district court found that it properly had jurisdiction to adjudicate the Committee's claim this time, for reimbursement as "equitable relief" under § 502(a)(3)(B), because the Committee was seeking a constructive trust over Varco's reserve account. Varco and Dunford then filed a timely interlocutory appeal of the injunctions arguing, in relevant part, that the district court lacked jurisdiction over the claims because the Committee was seeking legal relief based on the language of the Plan.

While the injunction was pending on appeal, the district court proceeded to address the merits of the case. On October 2, 2002 the district court granted the Committee's motion for summary judgment, holding that the Plan was due reimbursement of the paid medical expenses. *Varco III* at *4-6. The court also held that, pursuant to Illinois' common fund doctrine, the Committee must bear its proportional share of Dunford's attorney fee. Based on this doctrine, the court determined that the Committee was entitled to restitution of the paid medical expenses, $18,865.72, less its proportional share of Dunford's legal expenses for a total of $12,378.04. In rendering this decision, the district court issued an order noting that by adjudicating the merits of the claim, the preliminary in-

junctions entered in the case expired by their own terms.[3] As Varco notes, the district court's order on October 29, 2002, effectively mooted the cross-appeals filed by Varco and Dunford insofar as the appeals contested the merits underlying the preliminary injunctions.[4] However, Varco's challenge to the district court's jurisdiction to hear the case remains. The Committee then filed a timely appeal from the district court's order on the merits arguing that the common fund doctrine is preempted by ERISA. We consolidated these cases on appeal. Because of the district court's grant of summary judgment, and dismissal of Dunford as a litigant, the only remaining issues that survive on appeal are whether the district court had subject matter jurisdiction over the Committee's claims and, if so, whether the Committee must reimburse Varco for her payments to her attorney pursuant to Illinois common fund doctrine.

---

[3] The first injunction, which required Varco to hold the disputed funds, expired when "the trial court decided the rights of the parties with reference to the funds claimed by the [Committee]." *Varco I* at *4. The second injunction, which prevented further litigation in state court, expired when all of the remaining actions in the case were removed and then resolved by the district court.

[4] The district court also noted that Wal-Mart's claims against Dunford were voluntarily dismissed pursuant to F.R.C.P. 41(a)(2). The court then dismissed Dunford's counterclaim against Wal-Mart for attorney's fees, and dismissed Dunford as a defendant in the case, as he had received full compensation for his services and all of the disputed funds were in the possession of Varco. Because the issues involving Dunford were mooted by the district court's order disbursing the attorney's fees, he was not included with Varco as an appellant by Wal-Mart. Dunford did not file his own appeal from the court's decision on the merits of the action and thus he has nothing further left at stake in the present appeal. We therefore order Dunford's appeal (02-1143) dismissed as moot.

## III

On appeal, Varco asserts that the district court erred in finding subject matter jurisdiction to hear the case under 28 U.S.C. § 1331. Varco argues that the district court lacked subject matter jurisdiction because the Committee's claim was for money due and owing under contract, which is essentially a legal remedy, and ERISA creates jurisdiction in federal court only for "other appropriate equitable relief" under § 502(a)(3)(B). Varco argues that the creation of a constructive trust over the disputed funds falls outside of this jurisdictional grant.

### A. Subject Matter Jurisdiction

Under 28 U.S.C. § 1331, federal courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." A case arises under the laws of the United States within the meaning of § 1331 only when the claim for relief depends in some way on federal law as stated in a well pleaded complaint, "unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914); *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 401 (7th Cir. 2001). ERISA § 502(a)(3) authorizes a civil action "by a . . . fiduciary (A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of the plan." 29 U.S.C. § 1132(a)(3). In this case the district court held, relying on the Supreme Court's reasoning *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), that the Committee was seeking equitable relief as required by ERISA in the form of a constructive trust over the funds held in Varco's reserve account, and, therefore, it had jurisdiction to adjudicate the merits of the Committee's claim. *Varco II,* at *2-3.

In *Great-West Life*, the Court considered a case with facts
similar to this case and therefore bears scrutiny. Janette
Knudson, a beneficiary of an ERISA-governed employee
welfare benefit plan, was injured in a car accident. *Great-
West Life*, 534 U.S. at 207. The employee benefit plan
included a reimbursement provision that provided the plan
with "the right to recover from the [beneficiary] any pay-
ment for benefits paid by the Plan that the beneficiary is
entitled to recover from a third party." *Id.* In particular, the
Great-West plan had "'a first lien upon any recovery,
whether by settlement, judgment or otherwise,' that the
beneficiary receives from the third party, not to exceed 'the
amount of benefits paid [by the Plan] . . . [or] the amount
received by the [beneficiary] for such medical treat-
ment. . . .'" *Id.* According to this provision, the Great-West
plan covered $411,157.11 of Knudson's medical expenses, of
which all except $75,000 was paid by Great-West. *Id.* Great-
West then sought to obtain restitution of the medical
expenses it had paid on Knudson's behalf out of her dam-
ages recovery. *Id.* at 208. The Court looked at the substance
of plaintiff's complaint to determine whether it fell into
"those categories of relief that were typically available in
equity." *Great-West Life*, 534 U.S. at 210 (quoting *Mertens
v. Hewitt Associates*, 508 U.S. 248, 256 (1993)). Restitution,
the court noted, is "'not an exclusively equitable remedy,'
and whether it is legal or equitable in a particular case (and
hence whether it is authorized by § 502(a)(3)(B)) remains
dependent on the nature of the relief sought." *Id.* at 215
(citing *Reich v. Continental Casualty Co.*, 33 F.3d 754, 756
(7th Cir. 1994)). The Court contrasted legal restitution,
which is not allowed under § 502(a)(3)(B), from equitable
restitution holding:

> [A] plaintiff could seek restitution in equity, ordinarily
> in the form of a constructive trust or an equitable lien,
> where money or property identified as belonging in good
> conscience to the plaintiff could clearly be traced to

particular funds or property in the defendant's posses-
sion. (citations omitted) A court of equity could then
order a defendant to transfer title (in the case of the
constructive trust) or to give a security interest (in the
case of the equitable lien) to a plaintiff who was, in the
eyes of equity, the true owner. But where "the property
[sought to be recovered] or its proceeds have been
dissipated so that no product remains, [the plaintiff's]
claim is only that of a general creditor," and the plain-
tiff "cannot enforce a constructive trust of or an equita-
ble lien upon other property of the [defendant]." . . .
Thus, for restitution to lie in equity, the action gener-
ally must seek not to impose personal liability on the
defendant, but to restore to the plaintiff particular
funds or property in the defendant's possession.

*Id.* at 213-14.(internal citations omitted)

In *Great-West Life*, the Court then noted that the proceeds
of the settlement to which Great-West maintained it was
entitled were not in the Knudson's possession, but instead
were in a Special Needs Trust. *Id.* at 214. Therefore, under
the *Mertens* standard, the Court concluded that Great-West
was not seeking equitable relief under § 502(a)(3)(B), be-
cause it was not claiming "particular funds that, in good
conscience, belong to petitioners, but that petitioners are
contractually entitled to some funds for benefits that they
conferred." *Id.*

Against this backdrop, we proceed to the Committee's
claim against Varco. The Committee, as a fiduciary, was
seeking to impose a constructive trust on the funds held in
Varco's reserve bank account. Unlike the legal action
addressed in *Great-West Life*, the funds at issue here are
identifiable, have not been dissipated, and are still in the
control of a Plan participant due to the fact that Dunford
placed them in a reserve account in Varco's name when
they were disbursed. Finally those funds, "in good con-

science," belong to the Committee. The Plan clearly states that Varco's rights to recover benefits may be subrogated when there is a settlement and that "[t]he Plan has first priority with respect to its right to reduction, reimbursement and subrogation." Under similar facts, we have held that a suit to impose a constructive trust "nestles comfortably" within ERISA's concept of equity. *Wal-Mart Stores, Inc. Associates' Health and Welfare Plan v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000); *see also* 1 Dan B. Dobbs, *Dobbs on the Law of Remedies: Damages-Equity-Restitution* § 4.3 pp. 591 (2d ed. 1993) ("[The asset subject to a constructive trust] may even be a fund of money like a bank account.").

   In response, Varco argues that this is essentially a legal claim asserted by the Committee in order to enforce its contract rights under the Plan because "a claim for money due and owing under a contract is 'quintessentially an action at law.'" *Wells*, 213 F.3d at 401 (citing *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442, 459 (1977)). Varco would have a valid argument under traditional principles of equity if an identifiable *res* did not exist to which the Committee could claim a legally recognized right. *See generally Dobbs* § 4.3(2) at 591. Similarly, an argument would exist if the Committee could not trace its property to a specific fund of money. *Id.* at 592. Neither of those situations, however, is presented here. Thus, under *Great-West Life*, the reimbursement action by the Committee in this unique case is equitable because the funds the Committee seeks to recover are identifiable, are in the control of a defendant, and the Committee is rightfully entitled to the monies under the terms of the Plan. Because those elements are met here, the Committee's claim is equitable under § 502(a)(3)(B) of ERISA, and the district court properly exercised federal question subject matter jurisdiction under 28 U.S.C. § 1331.

### B.  Common Fund Doctrine

We turn next to the question of whether the district court properly applied Illinois' common fund doctrine to the settlement proceeds. Under the common fund doctrine, a lawyer who recovers a sum of money (or "fund") for the benefit of others beyond his client is entitled to reasonable attorney's fees from the fund as a whole. *See Country Mutual Insurance Co. v. Birner*, 688 N.E.2d 859, 861-62 (Ill. 1997). It is a common law "equitable exception" to the general, or "American" rule, that each party to litigation bears its own attorney's fees, absent a fee-shifting statute. *See Scholtens v. Schneider*, 671 N.E.2d 657, 662 (Ill. 1996). To be entitled to fees under the common fund doctrine, an attorney must show "(1) that the fund was created as a result of legal services he performed; (2) that the subrogee did not participate in creating the fund; and (3) that the subrogee benefitted out of the fund." *Birner*, 688 N.E.2d at 862. When these conditions are satisfied, fees and expenses incurred in setting up the fund are typically apportioned among those who benefitted from its creation. *Id.* And, finally, "in Illinois, the attorney owns the claim for reimbursement for his services in creating a common fund." *Primax v. Sevilla*, 324 F.3d 544, 549 (7th. Cir. 2002) (*citing Bishop v. Burgard*, 764 N.E.2d 24, 30-32 (Ill. 2002)).

The district court held that even though the Plan specifically provided that the plan participant was responsible for all attorney's fees, the common fund doctrine would still apply, and that in this case the Committee was responsible for one-third of Dunford's fees. The court reasoned that the Plan language would only apply if the Illinois doctrine conflicted with and was preempted by § 514(a) of ERISA (29 U.S.C.§ 1141(a)).[5] *Varco II*, at *4. The district court then

---

[5]  ERISA provides two types of preemption: complete preemption
(continued...)

held, and Varco argues here, that ERISA does not preempt the common fund doctrine pursuant to the law as interpreted by the Illinois Supreme Court. *Id.* at *5 (citing *Bishop*, 764 N.E.2d at 34). In *Bishop*, the Illinois Supreme Court held that despite an ERISA plan's contractual language requiring 100% reimbursement, the common fund doctrine requires the plan to bear its proportionate share of the participant's attorney's fee.[6] The district court, and Varco, also rely on *Blackburn v. Sundstrand Corp.*, 115 F.3d 493, 497 (7th Cir. 1997). There we held that the Illinois common fund doctrine was not preempted by ERISA

---

[5] (...continued)
under § 502(e) and conflict preemption under § 514. *See Rice v. Panchal*, 65 F.3d 637, 640 (7th Cir. 1995). Section 502(e), by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief. *Id.* We have held that the common fund doctrine is not preempted under § 502(e). *Speciale v. Seybold,* 147 F.3d 612, 617 (7th Cir. 1998). *See also Primax* 324 F.3d at 549 (stating that in the complete preemption context ". . . we have held that ERISA does *not* preempt common fund claims"). Section 514, in contrast, provides for ordinary conflict preemption dependent on the relationship between the law in question and the language of the plan. Section 514(a) specifically provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a).

[6] The court put a special emphasis on the holding in *Bishop* noting that, "[i]t would be anomalous, however, for this court in this rare case in federal court to adhere to the view that the common fund doctrine does not apply where the 'run of the mine' case of this sort will be decided in the Illinois courts and governed by *Bishop*. If *Bishop* was wrongly decided, only the United States Supreme Court or the legislature can overrule it." *Varco III* at *6. However, while this case may be the rare case that finds jurisdiction in federal court under this cause of action, that does not mean we should defer to a state court determination of federal law unless that determination is also correct.

to the extent that it allowed ERISA plan beneficiaries to reduce their obligation to repay medical expenses by one-third pursuant to a subrogation provision based on beneficiaries' payment of attorney's fees. *Id.; accord Primax* at 549; *Wells*, 213 F.3d at 403. The plan at issue in *Blackburn* did not expressly require beneficiaries to pay their own attorney's fees. In this case, the Plan specifically provides that it "does not pay for nor is responsible for the participant's attorney's fees. Attorney's fees are to be paid solely by the participant."

We have as yet not had the opportunity to rule, either as a matter of state or federal common law, that the common fund doctrine defeats the terms of an ERISA plan that expressly requires participants to pay their own legal fees. *See Blackburn*, 115 F.3d at 496. In *Blackburn*, we found that although the common fund doctrine applied where the plan did not specifically require the participant to bear her own attorney's fees, we commented that "a plan might have a better argument if its governing documents expressly required participants to pay their own legal fees . . . and to remit the gross rather than the net proceeds from litigation." We cautioned that such a provision would likely give the injured person "every reason to disclaim any demand for medical expenses in tort suits, throwing on plans the burden and expense of collection," if not someone else. *Id.* at 496. Furthermore, we have stated that "[b]ecause ERISA supersedes any and all state laws relating to covered plans, . . . [the Illinois common fund] doctrine is not available to [the beneficiary] [where] the terms of the plan require reimbursement of the entire amount without the deduction of any attorney's fees." *Land v. Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Health and Welfare Fund*, 25 F.3d 509, 510 (7th Cir. 1994). This dicta in *Land* did not settle the matter as recognized in *Blackburn,* wherein we specifically noted that "[t]he status of the state's common fund doctrine is a recurring question that should be clarified. . . ." *Blackburn*,

115 F.3d at 495. This case presents the opportunity to answer that question in determining whether the Illinois common fund doctrine relates to and conflicts with the terms of the Plan.

"[A] state law relates to an ERISA plan 'if it has a connection with or reference to such a plan.'" *Egelhoff*, 532 U.S. at 147 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)). The requisite connection exists under 514(a) if a law mandates employee benefit structures or their administration or provides alternative enforcement mechanisms to ERISA. *New York Conf. of Blue Cross v. Travelers Ins. Co.*, 514 U.S. 645, 658 (1995). In this analysis, a court "look[s] both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive as well as to the nature of the effect of the state law on ERISA plans." *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 325 (1997) (internal citations and punctuation omitted). In *Egelhoff*, for example, the Court found conflict preemption and noted that the "the statute at issue here directly conflicts with ERISA's requirements that plans be administered, and benefits be paid, in accordance with plan documents." *Egelhoff*, 532 U.S. at 150. Justice Scalia, in his concurrence, notes that while he remained unsure "as to what else triggers the 'relate to' provision", the "pre-emptive provision of the Employee Retirement Income Security Act of 1974 (ERISA) is assuredly triggered by a state law that contradicts ERISA." *Id.* at 152 (J. Scalia, concurring).

In this case, much like *Egelhoff*, state law contradicts the terms of the Plan and therefore contravenes ERISA's requirements that plans be administered, and benefits be paid, in accordance with plan documents. *See also Melton v. Melton*, 324 F.3d 941, 945 (7th Cir. 2003). Varco seeks to invoke a state law doctrine to her advantage in determining her recovery as a beneficiary under an ERISA-regulated

employee benefits plan. If the Illinois common fund doctrine were applied, the Committee would receive less than total reimbursement of Varco's medical benefits from her settlement through the deduction of her attorney's fees in contravention of the clear mandate of the Plan. Conflict preemption, therefore, is appropriate in this case where "Congress has made its preemption intention clear in the language of the statute, the Supreme Court has affirmed that intent, and we have applied the rule in similar cases." *Melton*, 324 F.3d at 945 (*citing* 29 U.S.C. § 1144(a) and *Egelhoff*, 532 U.S. at 151). Because the Plan controls in this case, the Committee is due the full amount of the medical expenses paid on Varco's behalf, or $18,865.72.

Furthermore, it is not readily apparent that Varco has standing to raise the claim for attorney's fees under the Illinois common fund doctrine. In *Bishop*, the Illinois Supreme Court noted that the right of the common fund doctrine is a "quasi-contractual right to payment of fees for services rendered [and] belongs to the attorney who rendered the services and does not affect the contractual relationship between the plan participant and the plan." *Bishop* at 31 (citing *Scholtens v. Schneider*, 671 N.E.2d 657 (1996)); *Primax*, 344 F.3d at 547. Common fund claims are therefore considered "wholly independent of a benefit plan under Illinois law, and [are] to be brought by a third party, the attorney who represented the participant, to enforce the attorney's quasi-contractual right to payment for services rendered in recovering [for the plan's benefit].*" Hillenbrand v. Meyer Medical Group, S.C.*, 720 N.E.2d 287, 294 (1999). For example, in *Bishop*, although the named parties to the action were the plan and the plan participant, the court viewed "the motion for adjudication . . . [as] an independent action by the attorney, which is unrelated to the benefit plan and does not alter the contractual relationship of the parties thereto." *Id.* at 34. Because of this characterization, the court determined that the parties properly had standing to maintain the cause of action and ruled that neither

conflict preemption, under § 514(a), nor complete preemp-
tion, under § 502(e), applied to the claim due to the lack of
a relationship between the plan and the claimant. *Id.*

Pursuant to this characterization, Varco would only have
standing to bring this claim under Illinois law if this case
involves a dispute which can be fairly characterized as an
independent action by the attorney to enforce his right to
payment for services rendered. As we previously noted,
Varco's attorney Dunford has been dismissed from this
action and all of the disputed funds remain in Varco's sole
possession in a reserve account in her name. The Commit-
tee in this case is therefore seeking to assert its rights
under the Plan, through an equitable action, to monies held
in their entirety by Varco. Dunford has already been
completely compensated, and perhaps over-compensated,
with other funds derived from the settlement. What Varco
is really seeking is reimbursement from the Committee for
the fees that she has already paid to Dunford in anticipa-
tion of the application of the Illinois common fund doctrine.
However, as Illinois courts have held, the common fund
doctrine operates independently of a plan document. The
relationship between Varco and the Plan is controlled
completely by the terms of the Plan, *see Egelhoff*, 532 U.S.
at 147-48, and those terms dictate that the Plan is not
responsible for attorney's fees. If Dunford had not compen-
sated himself fully, and, as a result, still had a stake in the
action based on the outcome of this case, then the district
court could have properly categorized the action as one by
an attorney to enforce his rights and therefore appropri-
ately brought by Varco under Illinois state law. But because
Dunford has no stake in the outcome of this case, this
action by Varco is not for appropriate equitable relief
pursuant to the Illinois common fund doctrine.

Our conclusion that the Illinois common fund doctrine
conflicts with, and therefore is preempted by, the terms of

the Plan in this case does not completely foreclose the possibility of Varco asserting a claim. As Varco argues, the federal common fund doctrine, which is similar to, but not identical in application to the Illinois doctrine, has existed independently in the federal system since 1882. *See Boeing v. van Gemert, et al.*, 444 U.S. 472, 478 (1980). Although primarily used only in situations involving class action law suits, federal courts have interpreted the doctrine to apply in single-party ERISA disputes despite the absence in the suit of the affected attorney. *See McIntosh v. Pacific Holding Co.*, 120 F.3d 911, 912 (8th Cir. 1997); *Waller v. Hormel Foods Corp.*, 120 F.3d 138, 141 (8th Cir. 1996). *But see Harris v. Harvard Pilgrim Health Care, Inc.*, 208 F.3d 274, 278-79 (1st Cir. 2000).

Courts that have applied the federal common fund doctrine have done so pursuant to the rule that courts may fashion federal common law when "necessary to effectuate the purposes of ERISA." *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir. 1992) (citations omitted). However, in reviewing ERISA-related disputes, "[r]esort to federal common law generally is inappropriate when its application would conflict with the statutory provisions of ERISA, discourage employers from implementing plans governed by ERISA, or threaten to override the explicit terms of an established ERISA benefit plan." *Id.* (citations omitted).

As we have often recognized, one of ERISA's primary purposes is to ensure the integrity of written plans. *Duggan v. Hobbs*, 99 F.3d 307, 309-10 (9th Cir. 1996); *see also Van Orman v. American Ins. Co.*, 680 F.2d 301, 312 (3d Cir. 1982) ("The Supreme Court has emphasized the primacy of plan provisions absent a conflict with the statutory policies of ERISA."); *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 128 (7th Cir. 1992). Thus, we have held that to ensure the integrity of pension and welfare plans courts should confine the benefits to the terms of the plans as

written. *Pohl*, 956 F.2d at 128. Therefore, it is inappropriate to fashion a common law rule that would override the express terms of a private plan unless the overridden plan provision conflicts with statutory provisions or other policies underlying ERISA. *Id.*

In this case, applying federal common law to override the Plan's reimbursement provision would contravene, rather than effectuate, the underlying purposes of ERISA because the express terms of the Plan provide for the appropriate distribution of attorney's fees. *See Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58 (7th Cir. 1992); *Ryan by Capria-Ryan v. Federal Express Corp.*, 78 F.3d 123, 127-28 (3d Cir. 1996) (holding that the federal common fund doctrine may not be applied in contravention of a plan's terms).

Those cases which have applied the federal common fund doctrine in the favor of individual ERISA participants have done so, correctly, only in the absence of controlling plan language. *See McIntosh* at 917; *Waller*, at 141. Accordingly, we conclude that the Plan in this case controls the relationship between Varco and the Committee, and because it does not authorize the payment of her attorney's fees, we do not possess the authority to rewrite the Plan in her benefit.

Finally, Varco argues that by allowing the Committee to recoup its medical payments even though it did not pay for the legal prosecution of the action, we are essentially awarding them unjust enrichment. However, the unambiguous language of the Plan obligates her to repay the benefits paid in full without a pro rata deduction for her legal expenses, and thus any so-called enrichment is not unjust. *See Ryan*, 78 F.3d at 127 ("Enrichment is not 'unjust' where it is allowed by the express terms of the . . . plan.") (quoting *Cummings by Techmeier v. Briggs & Stratton Retirement Plan*, 797 F.2d 383, 390 (7th Cir. 1986)). This type of plan provision, involving the relinquishment by a plan partici-

pant of certain legal rights, has previously been upheld in *Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293, 1297-98 (7th Cir. 1993). In *Cutting*, we explained the trade-off whereby most covered persons—if given an option—would readily give up a "common fund-type" reduction in exchange for having their medical expenses paid up-front in third-party liability situations instead of refusing the benefits (and therefore not having to reimburse the plan) and paying their medical expenses out of their settlement. "Assignment, by shifting the insured's tort rights to the insurance company, reduces the price of insurance and thus enables the insured to obtain more coverage, in effect trading an uncertain bundle of tort rights for a larger certain right, which is just the sort of trade that people seek through insurance." *Id.* at 1298. In this case, plan participants have traded the possibility of having the Plan participate in attorney's fees for the guarantee that medical bills will be paid immediately.

## IV

In conclusion, the district court correctly accepted subject matter jurisdiction under 502(a)(3)(B) because the Committee was seeking an equitable remedy to enforce the terms of the Plan. However, the court improperly held that the Illinois common fund doctrine applied in reducing the amount owed to Committee from $18,865.72 to $12,378.04. The federal common fund doctrine is inapplicable in this case as its application would contravene the plain language of the Plan. This case is AFFIRMED in part, REVERSED in part, and REMANDED to the district court with instructions, to proceed in the manner provided.

A true Copy:

      Teste:

                           _____
                          *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*