Argued and submitted November 14, 2003, reversed February 18, petition for review denied May 18, 2004 (337 Or 34)

# LIBERTY NORTHWEST INSURANCE CORPORATION, an Oregon corporation,
*Respondent,*

*v.*

# William KEMP,
*Appellant.*

## 0103-02636; A118217

85 P3d 871

James S. Coon argued the cause for appellant. With him on the brief was Swanson, Thomas & Coon.

R. Daniel Lindahl argued the cause for respondent. With him on the brief were Katherine S. Somervell and Bullivant Houser Bailey PC.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

SCHUMAN, J.

Edmonds, P. J., concurring.

## SCHUMAN, J.

This case presents the following question: Does the Employment Retirement Income Security Act of 1974, commonly known as ERISA, preempt a common-law claim for breach of an employer-sponsored group medical insurance contract? In particular, the issue is whether ERISA preempts plaintiff, Liberty Northwest Insurance Corporation (Liberty), from enforcing a "Reimbursement and Subrogation" clause requiring defendant, a Liberty policyholder, to repay Liberty for any injury-related medical expenses paid to him by Liberty if he also recovers those expenses from the party that caused the injury. The trial court concluded that ERISA did not preempt the insurer's breach of contract claim against defendant. We reverse.

## I. FACTUAL, PROCEDURAL, AND LEGAL BACKGROUND

The following facts and conclusions are undisputed. Defendant held an employer-sponsored group health insurance policy issued by Liberty. The plan is an "employee benefit plan" under ERISA. 29 USC § 1002(1). One term of the policy provided,

"5.8 Reimbursement and Subrogation. When a Covered Person's Injury appears to be the fault of another, benefits otherwise payable under the Plan for Covered Medical Expense incurred as a result of that Injury will not be paid unless the Covered Person or his/her legal representative agrees:

"(1) to repay Liberty for such benefits to the extent they are for losses for which compensation is paid to the Covered Person by or on behalf of the person at fault;

"(2) to allow Liberty a lien on such compensation and to hold such compensation in trust for Liberty[.]"

On February 3, 1997, defendant was injured in a bicycle accident and received extensive medical treatment. He subsequently authorized his representative to sign an agreement on his behalf to reimburse Liberty according to the terms of the policy if he recovered from the party that injured him.

Defendant brought an action against that party, resulting in a structured payment schedule valued at approximately $5,000,000. Following the settlement, Liberty asserted a lien to recover the $721,383.04 in benefits that it had paid on defendant's behalf. Defendant refused to pay. Liberty then brought this action for breach of contract and moved for summary judgment. Defendant cross-moved for summary judgment, arguing that Liberty could not enforce its claim because ERISA preempted it. The court granted Liberty's motion, denied defendant's cross-motion, and entered a money judgment in favor of Liberty. Defendant appeals.

In 1992, Justice Stevens noted that the scope of ERISA's preemption clause, ERISA section 514(a), 29 USC section 1144 (Section 514(a)), had come before state and federal courts in more than 2,800 reported cases since Congress enacted the statute in 1974. *District of Columbia v. Greater Washington Board of Trade*, 506 US 125, 135, 135 n 3, 113 S Ct 580, 121 L Ed 2d 513 (1992) (Stevens, J., dissenting). Today, according to a data base search, that number stands at more than 8,000. This profusion results at least partly from the expansive language of Section 514(a), which provides in part that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. A "state law" includes "all laws, decisions, rules, regulations, or other State action having the effect of law[.]" 29 USC § 1144(c)(1). "Other state action," in turn, includes common-law claims. *See, e.g., Pilot Life Ins. Co. v. Dedeaux*, 481 US 41, 107 S Ct 1549, 95 L Ed 2d 39 (1987) (ERISA held to preempt state tort and contract claim against insurer). Thus, ERISA preemption is both broad and imprecise.

Further, the Supreme Court has developed a method for analyzing preemption under ERISA that appears to vary in at least its terminology from traditional preemption analysis. For decades, Supreme Court opinions on preemption have followed a template like the one described in *Pacific Gas & Elec. v. Energy Resources Comm'n*, 461 US 190, 203-04, 103 S Ct 1713, 75 L Ed 2d 752 (1983):

"It is well established that within constitutional limits Congress may pre-empt state authority by so stating in express terms. Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be found from a scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it, because the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or because the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose. Even where Congress has not entirely displaced state regulation in a specific area, state law is pre-empted to the extent that it actually conflicts with federal law. Such a conflict arises when compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

(Internal quotation marks and citations omitted.) Thus, traditionally, preemption is either express or implicit. Implicit preemption, in turn, is either "occupying the field" preemption or "conflict" preemption. "Conflict" preemption occurs, under this analysis, when simultaneous compliance with federal and state law is physically impossible or when compliance with state law impedes implementation of federal law.

To the displeasure of at least one Supreme Court justice,[1] analysis of Section 514(a) has not tracked the traditional template. The reason lies in the language of the provision itself. Although it is technically an express preemption provision, it is so expansive and vague that the task of interpreting its express scope is indistinguishable from the task of discerning precisely what "field" it occupies, thus blurring the distinction between express preemption and the "field" aspect of implied preemption. Further, the Court has held that another provision of ERISA, its civil enforcement section, ERISA section 502(a), 29 USC section 1132(a)(3) (Section 502(a)), contains a list of remedies that ERISA participants, beneficiaries, and fiduciaries can seek and that the list

---

[1] Scalia, J., concurring in *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 US 316, 336, 117 S Ct 832, 136 L Ed 2d 791 (1997).

is exclusive. *Pilot Life Ins. Co.*, 481 US at 54. Because that holding appears to permit the inference that a remedy not authorized by ERISA both relates to and conflicts with it, the holding blurs the distinction between express preemption and the "conflict" aspect of implied preemption.

Thus, instead of using traditional preemption terms and templates, the Court determines whether the state law in question "has a connection with or reference to" an ERISA plan. *Shaw v. Delta Air Lines, Inc.*, 463 US 85, 97, 103 S Ct 2890, 77 L Ed 2d 490 (1983). A law "has reference to" ERISA if, by its very terms, it names that statute. *Mackey v. Lanier Collection Agency & Serv.*, 486 US 825, 829, 838 n 12, 108 S Ct 2182, 100 L Ed 2d 836 (1988). "Connection with" is more difficult. As a supposed amplification of the statutory phrase itself—"relates to"—it is a restatement and not a clarification. *Egelhoff v. Egelhoff*, 532 US 141, 147, 121 S Ct 1322, 149 L Ed 2d 264 (2001). Thus, to give the phrase some content, the Court has emphasized that "to determine whether a state law has the forbidden connection, we look both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans." *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 US 316, 325, 117 S Ct 832, 136 L Ed 2d 791 (1997) (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 US 645, 656, 115 S Ct 1671, 131 L Ed 695 (1995).

■ Following the Supreme Court's lead, then, we do not apply standard preemption analysis with its distinctive typology and consequent distinctions between various classes of cases. Instead, we focus our inquiry on whether Liberty's breach of contract action "has reference to" ERISA, whether permitting that action would interfere with the objectives of ERISA, and whether permitting it would have a significant impact on the administration of ERISA plans— acknowledging that these inquiries, to some extent, blend into each other. We also acknowledge and take guidance from two precepts that the Court affirms in both traditional and ERISA preemption cases: first, preemption is always a matter of Congressional intention; and second, in the absence of a clear indication to the contrary, Congress does not intend to

supplant state law in areas of traditional state sovereignty. *See Rice v. Santa Fe Elevator Corp.*, 331 US 218, 230, 67 S Ct 1146, 91 L Ed 1447 (1947) (stating general principles); *De Buono v. NYSA-ILA Medical and Clinical Services Fund*, 520 US 806, 815, 117 S Ct 1747, 138 L Ed 2d 21 (1997) (stating principles in ERISA context); *see also Gast v. State of Oregon*, 36 Or App 441, 452, 585 P2d 12 (1978) (adopting principles in ERISA context).

■ Because resolving this case requires interpretation of ERISA, we must initially confront the issue of interpretive method. The parties correctly assert that in interpreting ERISA, we must

> "follow the methodology generally used in ERISA preemption cases by the Supreme Court of the United States. That is, 'we begin * * * with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs.' *New York Blue Cross*, [514 US at 665]."

*Shaw v. PACC Health Plan, Inc.*, 322 Or 392, 400, 908 P2d 308 (1995). Defendant, however, appears to view this method through the lens of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993)—that is, he appears to assume that the phrase "related to" in the ERISA preemption clause means literally what it says, thereby, in the words of *New York Blue Cross,* obviating the "need" to "move on" to its "structure and purpose." 514 US at 655.

That approach, in fact, accurately reflects the Supreme Court's approach in many early ERISA preemption cases. The Court held, for example, that ERISA preempts state laws requiring pension plans not to discriminate on the basis of pregnancy, observing that the "breadth of [ERISA's] pre-emptive reach is apparent from [its] language," *Shaw*, 463 US at 96; that ERISA preempts an insured's common-law tort and contract claims against an insurer, observing that the preemption clause has an "expansive sweep" and is "deliberately expansive," *Pilot Life Ins. Co.*, 481 US at 46-47; that ERISA preempts some applications of a state's garnishment statutes against a pension recipient, observing that the clause is "broadly worded," *Ingersoll-Rand Co. v. McClendon*, 498 US 133, 138, 111 S Ct 478, 112 L Ed 2d 474 (1990); and

that ERISA preempts a state statute invalidating subrogation clauses in insurance contracts, observing that the clause is "conspicuous for its breadth," *FMC Corp. v. Holliday*, 498 US 52, 58, 111 S Ct 403, 112 L Ed 2d 356 (1990). In fact, the Court has cited legislative history to demonstrate that the text means what it says: In *Shaw*, 463 US at 99, the Court noted that the Conference Committee responsible for the final text of the preemption clause explicitly rejected a narrower version and that one of the bill's sponsors stated that the preemption provision " 'is intended to apply in its broadest sense to all actions of State or local governments[.]' " *Id.* (quoting 120 Cong Rec 29933 (1974)). Subsequently, the Court said, with specific reference to ERISA's preemption clause, "[V]ague notions of a statute's 'basic purpose' are nonetheless inadequate to overcome the words of its text[.]" *Mertens v. Hewitt Associates*, 508 US 248, 261, 113 S Ct 2063, 124 L Ed 2d 161 (1993) (citing *Pension Benefit Guaranty Corp. v. The LTV Corp.*, 496 US 633, 646-47, 110 S Ct 2668, 110 L Ed 2d 579 (1990)).

All of those pronouncements, however, occurred before *New York Blue Cross*. In that 1995 case, the Court explained that, "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course[.]" 514 US at 655. Rejecting such literal textualism, the Court held that "[w]e simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.* at 656. In subsequent cases, the Court has interpreted ERISA's preemption clause not by focusing primarily on the limits of the phrase "relate to" but by using the approach that it rejected in *Mertens*, 508 US at 261, that is, by reference to the statute's objectives. *See, e.g., California Div. of Labor Standards Enforcement,* 519 US 316; *De Buono*, 520 US at 810; *Egelhoff*, 532 US at 147. Therefore, we regard the text and context of Section 514(a) as highly relevant but not dispositive factors in determining whether Liberty's common-law breach of contract claim is preempted.

For example, defendant calls to our attention, and urges us to adopt, the magistrate judge's reasoning in a

recent case from the United States District Court for Oregon: "Whatever the outer limits of ERISA preemption, I see no way to avoid the conclusion that an action to enforce the provisions of an employee benefit plan is a claim relating to an employee benefit plan." *Providence Health Plan v. McDowell*, No. 01-1704-JE (Jan 29, 2002) (slip op at 4). Similar straightforward and logical interpretation would lead to the conclusion that an action to garnish the proceeds of an ERISA-covered pension plan "is a claim relating to an employee benefit plan." Yet the Supreme Court held, even in the pre-*New York Blue Cross* era, that such a claim is not preempted. *Ingersoll-Rand Co.*, 498 US at 139. Nor does ERISA preempt "lawsuits against ERISA plans for run-of-the-mill state-law claims such as * * * torts committed by an ERISA plan * * *." *Mackey*, 486 US at 833. Any easy assertion that a case such as the present one can be resolved by the application of common sense and a dictionary does not adequately acknowledge the nuances of post-*New York Blue Cross* ERISA jurisprudence—which perhaps explains why the Supreme Court has recently and expressly reserved judgment on the issue. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 US 204, 220, 122 S Ct 708, 151 L Ed 2d 635 (2002) ("We express no opinion as to * * * whether a direct action * * * asserting state-law claims such as breach of contract would have been pre-empted by ERISA.").

## II. ANALYSIS

### A. *Does Liberty's claim "have reference" to ERISA?*

As noted above, a law "has reference to" ERISA if it explicitly names that statute. *Mackey*, 486 US at 829, 838 n 12. In *Mackey*, for example, the Court held that ERISA preempted a Georgia statute that provided, in part:

> "Funds or benefits of a pension, retirement, or employee benefit plan or program subject to the provisions of the federal Employee Retirement Income Security Act of 1974, as amended, shall not be subject to the process of garnishment * * *."

Ga Code Ann § 18-4-22.1 (1982) (quoted in *Mackey*, 486 US at 828 n 1). At the same time, however, the Court held that ERISA did *not* preempt an action brought under Georgia's

general garnishment statute, which "does not single out or specially mention ERISA plans of any kind," even when the statute was applied against funds from an ERISA pension. *Mackey*, 486 US at 831. This distinction suggests by analogy that a common-law cause of action such as breach of contract, which, of course, as a generic cause of action does not explicitly name ERISA, would not "have reference to" ERISA even when the particular cause of action at issue involves the provisions of an ERISA plan.

Closer reading of *Mackey*, however, reveals that the suggested analogy does not apply. The Court held that the garnishment action survived a preemption challenge not because it was an application of an ERISA-neutral statute but because it conflicted with other provisions of ERISA that "indicate that Congress did not intend to forbid the use of state-law mechanisms of executing judgments against ERISA welfare benefit plans, even when those mechanisms prevent plan participants from receiving their benefits." *Id.* at 831-32. Thus, *Mackey* leaves open the possibility that a particular application of an ERISA-neutral, common-law cause of action may be preempted when that particular application necessarily implicates an ERISA plan.

■        Indeed, in a case decided after *Mackey*, the Court reached exactly that conclusion. In *Ingersoll-Rand Co.*, the plaintiff brought a common-law unlawful termination action against his employer, alleging that the employer fired him shortly before his pension would have vested in order to avoid contributing to it. 498 US at 135-36. Instead of analogizing the common-law action to application of the ERISA-neutral garnishment statute in *Mackey* and concluding that the application was not preempted, the Court analogized the common-law case to application of the ERISA-specific statute in *Mackey*. "We are not dealing here with a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan. * * * Here, the existence of a pension plan is a critical factor in establishing liability under the State's wrongful discharge law." *Ingersoll-Rand Co.*, 498 US at 139-40. Quoting *Mackey*, the Court explained:

" '[W]e have virtually taken it for granted that state laws which are "specifically designed to affect employee benefit plans" are pre-empted under § 514(a).' *Mackey*, [486 US at 829]. In *Mackey* the statute's express reference to ERISA plans established that it was so designed; consequently, it was pre-empted. The facts here are slightly different but the principle is the same: The Texas cause of action makes specific reference to, and indeed is premised on, the existence of a pension plan. In the words of the Texas court, the cause of action 'allows recovery when the plaintiff proves that the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund.' 779 S.W.2d, at 71. Thus, in order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists and the employer had a pension-defeating motive in terminating the employment. Because the court's inquiry must be directed to the plan, this judicially created cause of action 'relate[s] to' an ERISA plan."

*Id.* at 140. The "Texas cause of action" to which the Court refers, and therefore the proper focus of the inquiry, is not the generic common-law action for unlawful termination; many such claims would not implicate ERISA. Rather, the focus is on the *particular* cause of action involving a *particular* case of allegedly unlawful termination, and *that particular* cause of action is preempted because it necessarily implicates an employee benefit plan. The unavoidable conclusion is that the application of a general, ERISA-neutral, common-law cause of action has "reference to" ERISA and is preempted, when that cause of action explicitly involves an employee benefit plan covered by ERISA and in order to prevail the plaintiff's complaint and the court's decision must necessarily refer to the plan. This general rule, however, does not apply if, as in *Mackey*, some other provision of ERISA shows that Congress intended to permit the state action.

■    Under that precept, in this case ERISA has preemptive force. Liberty's complaint derives from and is based on an employee benefit plan. It alleges that "defendant William Kemp was covered under a group health insurance policy issued by Liberty to his employer," that "[t]he policy provides in Section 5.8 that when plaintiff has paid benefits on behalf

of defendant, plaintiff will be subrogated to all rights of recovery that defendant has against the person who is at fault," that "pursuant to the terms of the group health insurance policy, * * * [d]efendant completed and signed a Reimbursement Agreement," and that "[d]efendant's failure and refusal to reimburse plaintiff out of the proceeds of his recovery for the accident is in violation of the terms of the policy." To prevail, plaintiff had to prove the existence of the employer benefit plan and a violation of one of its terms. As in *Ingersoll-Rand Co.*, "the court's inquiry must be directed to the plan." *Id.* at 140. The claim therefore "has reference to" ERISA.

Because nothing in ERISA indicates that Congress intended to permit common-law breach of contract claims, the fact that Liberty's breach of contract claim has reference to an employer-sponsored plan justifies reversing the trial court in this case. Additionally, however, we also conclude that Liberty's action is preempted because it interferes with one of Congress's most important objectives in enacting ERISA.

B. *Does Liberty's claim interfere with the objectives of ERISA?*

ERISA has several objectives. In *Boggs v. Boggs*, 520 US 833, 845, 117 S Ct 1754, 138 L Ed 2d 45 (1997), the Court stated that "[t]he principal object of the statute is to protect plan participants and beneficiaries." That statement echoes 29 USC section 1001(b), which provides that the policy of the statute is "to protect * * * the interests of participants in employee benefit plans and their beneficiaries[.]" Defendant does not, and could not, argue that allowing common-law breach of contract actions to enforce reimbursement clauses would imperil him or his beneficiaries; it would, at most, preclude double recovery. Indeed, in *Alessi v. Raybestos-Manhattan, Inc.*, 451 US 504, 516, 101 S Ct 1895, 68 L Ed 2d 402 (1981), the Court held that, although Congress prevented state laws that worked forfeitures on ERISA benefits, it nonetheless intended to permit so-called "integration" statutes requiring participants and beneficiaries to offset pension benefits by workers' compensation awards.[2]

---

[2] We do not infer from this conclusion that Congress also intended to permit common-law contract claims. As discussed below, Congress listed available civil

Protection of participants and beneficiaries is not, however, the only objective of ERISA. According to the Supreme Court, Congress intended

> "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government * * *, [and to prevent] the potential for conflict in substantive law * * * requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction."

*Ingersoll-Rand Co.*, 498 US at 142; *accord New York Blue Cross*, 514 US at 656-57.

Further, one of the ways in which state laws can conflict with the Congress's uniformity objective is by providing "alternative enforcement mechanisms." *New York Blue Cross*, 514 US at 658. That phrase refers to Section 502(a) of ERISA, its civil enforcement provision. 29 USC § 1132(a) (Section 502 (a)). The Court in *Pilot Life Ins. Co.* noted that "the civil enforcement scheme of § 502(a) is one of the essential tools for accomplishing the stated purposes of ERISA," and that therefore, most significantly, the list of available remedies in that section is exclusive: "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." 481 US at 52, 54.

■ *Pilot Life Ins. Co.* dealt with common-law claims brought by a policyholder against an insurer, and its holding refers to the paragraph of Section 502(a) dealing with civil actions brought by plan participants or beneficiaries. We see no reason why the same logic would not apply to civil actions brought *by* a plan provider *against* a participant or beneficiary; such actions present the same potential for destroying uniformity. We therefore conclude that, if Liberty's claim is not one of the remedies that Section 502(a) authorizes, then it

---

enforcement mechanisms in Section 502(a), 29 USC section 1132 (a), and common-law legal actions are not among them.

is an "alternative enforcement mechanism" and, for that reason, is preempted.

Section 502(a) contains six subsections. Four enumerate actions that can be brought only by plan participants, beneficiaries, and the Secretary of Labor. Section 502 (a)(1), (4)-(6). Liberty is not and does not claim to be a participant (an employee or former employee who "is or may become eligible to receive a benefit," 29 USC section 1002(7)) or a beneficiary ("a person designated by a participant * * * who is or may become entitled to a benefit," 29 USC section 1002(8)), and obviously it is not the Secretary of Labor. Of the two remaining sections, one deals with actions regarding fiduciary duties and is not relevant to this case. Section 502(a)(2). Thus, as Liberty acknowledges, only one subsection identifies a civil action that could be relevant here: Section 502(a)(3), which provides that an action may be brought

> "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan[.]"

Thus, even if we were to assume that Liberty is an ERISA fiduciary,[3] under recent Supreme Court case law, Liberty's claim is not authorized by ERISA, and is therefore a preempted alternative enforcement mechanism, unless it is an action to obtain injunctive or equitable relief.

It is not. The complaint specifies only one claim: a claim for money damages for breach of contract. In *Great-West Life & Annuity Ins. Co.*, 534 US 204, the Court held that such a claim was not equitable, regardless of how it was characterized. The defendant, an ERISA plan beneficiary under her husband's medical insurance policy, suffered injuries in a car accident and received over $400,000 in medical expenses from the insurer. *Id.* at 207. The plan contained a reimbursement clause like the one in the present case. *Id.* The defendant sued Hyundai Motor Company and received a $650,000

---

[3] Liberty presents itself as a fiduciary without any supporting argument; we accept that characterization only for the purposes of argument and explicitly do not decide whether it is correct.

settlement. *Id.* When she refused fully to reimburse the insurer, it brought an action against her "seeking injunctive and declaratory relief under § 502(a)(3) to enforce the reimbursement provision of the Plan[.]" *Id.* at 208. The court rejected the claim, holding that, despite the insurer's attempt to characterize it as equitable, the claim was in essence a claim for money damages and therefore an action at law. *Id.* at 209-11. The Court reiterated its holding from *Mertens* that the term "equitable relief" in Section 502(a)(3) referred to "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." 508 US at 256 (emphasis in original). The Court concluded: "Because petitioners are seeking legal relief—the imposition of personal liability on respondents for a contractual obligation to pay money— § 502(a)(3) does not authorize this action." *Great-West Life & Annuity Ins. Co.*, 534 US at 221.

That conclusion compels us to conclude, in turn, that Liberty's action here is legal and not equitable. It therefore is not one of the remedies that Congress included in ERISA— with its "carefully crafted and detailed enforcement scheme," *Mertens*, 508 US at 254. It necessarily follows that the action is an "alternative enforcement mechanism" to ERISA and therefore is preempted.

We acknowledge that at least one other federal court has reached the opposite conclusion under similar facts. Liberty urges us to follow *Trustees of AFTRA Health Fund v. Biondi*, 303 F3d 765 (7th Cir 2002). In that case, Biondi, a plan participant, was obligated under a divorce decree to provide health insurance for his ex-wife. *Id.* at 769. Instead of informing his ERISA pension plan provider of the divorce, which would have removed his wife as a beneficiary under the plan and consequently obliged Biondi himself to pay for her insurance, he continued to list his ex-wife as his spouse for five years, during which time the provider reimbursed her for over $122,000 in health care benefits. *Id.* at 769-70. The trustees of the plan sued Biondi for common-law fraud. Biondi argued that the claim was preempted by ERISA. The district court disagreed and entered judgment for the plaintiffs on that claim. *Id.* at 769.

The Seventh Circuit affirmed. *Id.* Applying an analysis similar to the one we have used here, the court held that the only plausible preemption argument Biondi had was that the common-law fraud claim was an "alternative enforcement mechanism" as described in *New York Blue Cross. Trustees of AFTRA Health Fund*, 303 F3d at 776. The court held that it was not. It did so by distinguishing *Ingersoll-Rand Co.* and by applying a policy argument. Neither the distinction nor the argument is persuasive.

In distinguishing *Ingersoll-Rand Co.*, the court noted a "key difference between" that case and *Trustees*:

> "In *Ingersoll-Rand*, the Court held that the common law cause of action created by the Supreme Court of Texas was 'specifically designed' to affect employee benefit plans' * * *. *Id.* (citation omitted)."

*Trustees of AFTRA Health Fund*, 303 F3d at 777-78. The *Trustees* court attempts to distinguish *Ingersoll-Rand Co.* by arguing that the common-law wrongful termination action that was preempted there was "specifically designed" to target ERISA and was ERISA-specific, hence preempted, whereas *Trustees* involved a generic, non-ERISA-specific, common-law fraud action, and therefore should not be preempted. However, the phrase upon which this distinction rests, "specifically designed," appears in *Ingersoll-Rand Co.* in the following context:

> " '[W]e have virtually taken it for granted that state laws which are "*specifically designed* to affect employee benefit plans" are pre-empted under § 514(a).' *Mackey*, [486 US at 829]. In *Mackey* the statute's express reference to ERISA plans established that it was so designed; consequently, it was pre-empted. The facts here are slightly different but the principle is the same: The Texas cause of action makes specific reference to, and indeed is premised on, the existence of a pension plan."

*Ingersoll-Rand Co.*, 498 US at 140 (emphasis added). The *Ingersoll-Rand Co.* Court did not use the term "specifically designed" to refer to a generic common-law cause of action developed by courts for use in ERISA cases; rather, it quoted the term from *Mackey*, where it referred to a *statute* that *was* designed to deal exclusively with ERISA. The *Ingersoll-Rand*

*Co.* Court then analogized the particular action before it, a wrongful discharge action that happened to involve an ERISA plan as an essential piece of the litigation, to the statute in *Mackey* that was specifically designed to affect ERISA, and held that the wrongful discharge action was preempted, as was the *Mackey* statute. The distinction that the *Trustees* court relies on to distinguish *Ingersoll-Rand Co.*, therefore, does not exist. In both *Ingersoll-Rand Co.* and *Trustees* (and in the present case), the subject of the preemption claim is the particular, ERISA-involving application of an otherwise ERISA-neutral common-law cause of action. In *Ingersoll-Rand Co.* the court held that such an action was preempted. *Trustees* should have held the same. The holding it did reach cannot be reconciled with the outcome of *Ingersoll-Rand Co.* or with its language: "[A] state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll-Rand Co.*, 498 US at 139.

The second argument against preemption in *Trustees* centered on the premise that, if the fraud claim is preempted, then ERISA plan administrators would be powerless to "recover damages caused by a plan participant's fraudulent conduct." *Trustees of AFTRA Health Fund*, 303 F3d at 782. We find this argument unpersuasive for two reasons. First, regardless of whether a plan administrator has a remedy for fraud, it is not at all clear that an administrator in the position of Liberty has no remedies. The Supreme Court in *Great-West Life & Annuity Ins. Co.* noted that, at common law,

> "a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could be traced to particular funds or property in the defendant's possession."

534 US at 213 (quoting *Restatement of Restitution* § 260 Comment a (1936) (emphasis in original)). ERISA plan administrators in several cases have successfully recovered funds under this theory. *See, e.g., Administrative Committee of Wal-Mart v. Varco*, 338 F3d 680 (7th Cir 2003); *Providence Health Plan v. Washington*, No. 02-6233-AA (D Or Mar 13,

2003). Second, and more fundamentally, Congress's vague language, combined with binding, clear interpretations of it by the United States Supreme Court, compel the result that the *Trustees* court rejected. It is not for us to declare that these authoritative and relevant legal sources must be ignored in the name of what we might believe to be common sense or sound policy.

In sum, Liberty's breach of contract claim to enforce a reimbursement provision in its ERISA-controlled employee health plan explicitly and necessarily has reference to an employee benefit plan, and it also conflicts with ERISA's exclusive remedy provision. Therefore, ERISA preempts it.

Reversed.

**EDMONDS, P. J.,** concurring.

In light of the United States Supreme Court's decisions regarding the Employment Retirement Security Act of 1974 (ERISA), Congress should, in fairness to both insurers and policyholders, amend section 502(a)(3)(A) of the act to permit insurers to recover directly from policyholders amounts that are duplicated by amounts recovered from a third party that causes injury to the policyholder. Under the existing language of the act, ERISA policyholders are unjustly enriched because they are entitled to retain the benefits paid by insurers even though they have subsequently received compensation from third-party wrongdoers for the identical losses. In light of the Court's holding in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 US 204, 122 S Ct 708, 151 L Ed 2d 635 (2002), and its predecessors, there appears to exist no effective way in which an insurer can obtain direct reimbursement from the policyholder. According to the Court, Congress does not intend for insurers to have a remedy for recovery against the policyholders that results in personal liability to the policyholder. Although it may be legally possible for an insurer to recover benefits through a constructive trust on the money itself or through other means where the personal liability of the policyholder is not involved, the use of such remedies cannot help but complicate and perhaps frustrate the purposes for which the act was enacted by causing increased delay in the resolution of

claims and increased legal costs to both parties. While I concur with the majority's analysis, our result in this case, dictated by United States Supreme Court precedent, is draconian in its effect on the parties, particularly in light of the ordinary equitable principle that a person should be compensated for a loss only once.