**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 28 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ADMINISTRATIVE COMMITTEE
OF THE WAL-MART ASSOCIATES
HEALTH AND WELFARE PLAN,

      Plaintiff - Appellee,

v.

MELVIN WILLARD,

      Defendant - Appellant.

No. 04-3081

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 02-CV-2571-KHV)

---

Lori Bolton Fleming (Fred Spigarelli, and Thomas E. Hayes, with her on the briefs), The Spigarelli Law Firm, Pittsburg, Kansas, for Defendant - Appellant.

Christopher R. Hedican, (Heidi A. Guttau-Fox, with him on the brief), Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, L.L.P., Omaha, Nebraska, for Plaintiff - Appellee.

---

Before **KELLY**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge and **LUCERO**, Circuit Judge.

---

**KELLY**, Circuit Judge.

---

      Defendant-Appellant Melvin Willard appeals a judgment in favor of

Plaintiff-Appellee Administrative Committee of the Wal-Mart Associates Health and Welfare Plan ("Plan Administrators"). The district court held that the relief sought by the Plan Administrators constituted "appropriate equitable relief" under § 502(a)(3) of ERISA. Admin. Comm. of the Wal-Mart Assocs. Health & Welfare Plan v. Willard, 302 F. Supp. 2d 1267, 1276 (D. Kan. 2004). On appeal, Mr. Willard argues that the relief sought is not "appropriate equitable relief" under § 502(a)(3) of ERISA, that the district court erred in interpreting and enforcing the reimbursement and subrogation provision in the Plan, and that the district court's decision to enforce the terms of the Plan violates public policy. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

Background

Melvin Willard suffered injuries when a pharmacy employee of Wal-Mart Stores, Inc. ("Wal-Mart") erroneously filled his prescription in June 2001. Mr. Willard was a covered beneficiary under the Wal-Mart Associates Health and Welfare Plan ("the Plan"). The Plan provided coverage for Mr. Willard's medical expenses in the amount of $534,919.68. In August 2002, Mr. Willard and Wal-Mart reached a confidential settlement agreement, which stipulated that Wal-Mart would retain the amount of Mr. Willard's medical expenses from the full tort settlement, pending determination of the ownership of the funds equivalent to the

medical expenses.

On November 13, 2002, the Plan Administrators filed suit for equitable relief including an injunction, declaration of rights under the Plan, specific performance, mandamus, constructive trust, and equitable restitution against Willard to enforce the terms of the ERISA Plan.

The Summary Plan Description provided:

> The plan has the right to . . . recover or subrogate 100 percent of the benefits paid or to be paid by the Plan for covered persons to the extent of any and all of the following payments:
>
> Any judgment, settlement, or payment made or to be made because of an accident or malpractice, including but not limited to other insurance.

II Jt. App. at 164. A note to the reimbursement language further stated: "The Plan's right to reduction, reimbursement, and subrogation applies to any funds recovered from another party or on behalf of the estate of any covered person." Id. at 165. Finally, in a separate section of the Plan entitled "Cooperation Required," the Plan stated that covered persons or their representatives must "cooperate in order to guarantee reimbursement to the Plan from third party benefits." Id. at 164.

The Plan also set forth the Administrators' discretion and authority. The Plan Wrap Document provided:

> (a) The Plan Administrator shall have the sole discretion and authority to control and manage the operation and

administration of the Plan.

> (b) The Plan Administrator shall have complete discretion to interpret the provisions of the Plan . . . .

III Jt. App. at 232.

The district court allowed Wal-Mart to intervene and deposit the portion of the settlement proceeds equivalent to the medical expenses into the court registry. Thus, Wal-Mart had possession of the funds until April 7, 2003, when they were deposited into the registry. Wal-Mart was later dismissed. In July 2003, Willard and the Plan Administrators agreed to distribute the proceeds to the Plan Administrators pending resolution of the case. The court allowed the funds to be distributed. Later, the court vacated the order to distribute the proceeds and ordered the Plan Administrators to return the disputed proceeds to the court registry. Mr. Willard has never had possession of the funds in question.

On December 18, 2003, the Court heard oral argument on both parties' motions for summary judgment. Willard, 302 F. Supp. 2d at 1269 n.1. The parties agreed that a formal trial was unnecessary and that the dispute could be resolved on the cross motions for summary judgment. Id. Accordingly, the district court treated the memoranda on the cross motions for summary judgment as proposed findings of fact and conclusions of law and ruled as if the arguments and evidence had been submitted at a bench trial. Id. Ultimately, the district court entered judgment in favor of the Plan Administrators, holding that they were

entitled to an equitable lien on the disputed funds. Id. at 1285.

<u>Discussion</u>

Because the parties agreed that the oral argument on cross motions for summary judgment could be treated as a bench trial, we "review the district court's factual findings for clear error and its legal conclusions de novo." <u>Keys Youth Servs., Inc. v. City of Olathe</u>, 248 F.3d 1267, 1274 (10th Cir. 2001). The parties do not dispute the facts of this case. Aplee. Br. at 3-11; Aplt. Br. at 2-3.

ERISA § 502 authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of the plan." 29 U.S.C. § 1132(a)(3).

A. <u>Appropriate Equitable Relief</u>

The Supreme Court addressed the meaning of "appropriate equitable relief" under § 502(a)(3) of ERISA in <u>Mertens v. Hewitt Associates</u>, 508 U.S. 248, 251-63 (1993), and <u>Great-West Life & Annuity Insurance Co. v. Knudson</u>, 534 U.S. 204, 209-21 (2002). In <u>Mertens</u>, the Court held that the term "appropriate equitable relief" in § 502(a)(3) allows only "those categories of relief that were <u>typically</u> available in equity (such as injunction, mandamus, and restitution, but

not compensatory damages)."  508 U.S. at 256.

Subsequently, in Great-West, the Court elaborated on the distinction between "legal" and "equitable" relief, stating that "a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."  534 U.S. at 213.  On the other hand, reasoned the Court, if "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]."  Id. at 213-14 (alteration in original)  (citation and internal quotation omitted).  In such an instance, the plaintiff is seeking a legal remedy - the imposition of personal liability on the defendant to pay a sum of money which the plaintiff is owed - so his claim falls outside § 502(a)(3)'s jurisdictional grant.  Id. at 210.

Following Great-West, several other circuits have addressed whether a plan administrator may maintain an action for "appropriate equitable relief" to enforce a reimbursement provision after a plan beneficiary has received compensation from a third party.  Identifying the key facts discussed and relied upon in Great-West, courts have applied a three-part test: "Does the Plan seek to recover funds

(1) that are specifically identifiable, (2) that belong in good conscience to the plan, and (3) that are within the possession and control of the defendant beneficiary?" Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough, 354 F.3d 348, 356 (5th Cir. 2003); see also Admin. Comm. of Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan v. Varco, 338 F.3d 680, 687 (7th Cir. 2003).

    a. Specific Identifiability

In the instant case, the funds are specifically identifiable. In Varco, the court found that where the defendant established a reserve bank account from the settlement proceeds in the expected amount of the medical bills, the funds had not been dissipated and were specifically identifiable. 338 F.3d at 684. Similarly, the Bombardier court found that the funds in question were specifically identifiable when the settlement proceeds were placed in a trust account by the beneficiary's law firm. 354 F.3d at 350.

In this case, as part of the settlement agreement, Wal-Mart withheld the amount of medical expenses from the agreed tort settlement and deposited the funds in the court registry. Later, by agreement of the parties, the funds were distributed to the Plan Administrators pending resolution of the case. Thereafter, the court vacated the order distributing the funds to the Plan Administrators, and the res was returned to the court registry. Thus, the proceeds of the settlement in

contention in this case have not been dissipated and are specifically identifiable.

    b.  <u>The Plan's Rights to the Funds</u>

In <u>Great-West</u>, <u>Bauhaus USA, Inc. v. Copeland</u>, 292 F.3d 439, 441 (5th Cir. 2002), <u>Bombardier</u>, and <u>Varco</u>, the terms of the plans, like the plan before us, contained express, unambiguous reimbursement provisions, which resulted in the conclusion that the disputed funds belonged in good conscience to the plan.

Here, the Plan gives the Administrators the right to "recover or subrogate," and also gives "first priority with respect to its right to reduction, reimbursement, and subrogation." Though Mr. Willard contends that the Plan does not contain an express, unambiguous reimbursement provision entitling the Administrators to the proceeds of the third-party settlement, the language employed leaves no doubt that the funds in question "'belong in good conscience' to the plan." <u>Bombardier</u>, 354 F.3d at 356.

Despite the fact that the plan vests complete discretion in the Plan Administrators to interpret the provisions of the plan, Mr. Willard argues that the district court erred in applying the arbitrary and capricious standard rather than the de novo standard in reviewing the Administrators' interpretation of the Plan. Aplt. Br. at 18 (citing <u>Lefler v. United HealthCare of Utah, Inc.</u>, 162 F. Supp. 2d 1310 (D. Utah 2001). In <u>Lefler</u>, insured beneficiaries filed suit under § 502(a)(3) for breach of fiduciary duty. The court adopted a de novo standard of review

because the allegations under Utah insurance law and other ERISA provisions implicated defendant's fiduciary responsibilities. Lefler, however, is inapposite since in this case we are not concerned with a breach of fiduciary duty. Further, the Lefler court did not apply the de novo standard of review, but rather dismissed the § 502(a)(3) claims because viable claims existed under § 502(a)(1)(B).

"ERISA abounds with the language and terminology of trust law," Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110 (1989). Accordingly, "[t]rust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers." Id. at 111. Following this direction from Firestone, numerous courts have applied the arbitrary and capricious standard to review an administrator's discretionary actions in § 502(a)(3) cases. Bd. of Admin. v. Huntsman, No. 98-3766, 1999 WL 591458, at *3 n.3 (6th Cir. July 27, 1999); Watkins v. Westinghouse Handford Co., 12 F.3d 1517, 1524 (9th Cir. 1993); Engle v. Wal-Mart Assocs. Health & Welfare Plan, 48 F. Supp. 2d 1114, 1118 (N.D. Ind. 1999).

Here, by deciding to file suit for recovery of funds pursuant to a reimbursement and subrogation provision in the Plan, the Plan Administrators relied on their interpretation of the language of the plan. See Bill Gray Enters., Inc. Employee Health & Welfare Plan v. Gourley, 248 F.3d 206, 217 n.10 (3d Cir. 2001). Accordingly, it is appropriate to apply an arbitrary and capricious standard

to the Plan Administrators' interpretation of the reimbursement and subrogation provision. Nevertheless, we note that under either the arbitrary and capricious or de novo standards of review, our determination would be the same.

In interpreting an ERISA plan, the court examines the plan documents as a whole and, if unambiguous, construes them as a matter of law. Chiles v. Ceridian Corp., 95 F.3d 1505, 1511 (10th Cir. 1996). In doing so, we give "the language its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean." Blair v. Metro. Life Ins. Co., 974 F.2d 1219, 1221 (10th Cir. 1992) (emphasis omitted).

Mr. Willard argues that the Plan is ambiguous because the language of the reimbursement provision conflicts with a note to this provision and with the language under the "Cooperation Required" section of the Summary Plan Description. He points to language of the reimbursement provision stating that the Plan has the right to "recover or subrogate" any benefits paid to the extent of "[a]ny judgment, settlement, or payment made or to be made because of an accident." Mr. Willard argues that this provision is ambiguous when read against a note to the Plan, which reads, "The Plan's right to reduction, reimbursement, and subrogation applies to any funds recovered from another party by or on behalf of the estate of any covered person." In essence, he claims an ambiguity because

the reimbursement provision provides for recovery from "any judgment," while the note regarding recovery from estates of covered persons provides for recovery only from "another party."

Ambiguity exists when a plan provision is "reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term." Stewart v. Adolph Coors Co., 217 F.3d 1285, 1290 (10th Cir. 2000). We agree with the district court that because an estate is commonly and ordinarily used to describe the property one owns at death, a reasonable plan participant would read the note only to apply in the specific case where the beneficiary is deceased. Thus, the note does not limit the reimbursement provision; it only clarifies its terms in the event of a covered person's death.

Mr. Willard also argues that the language under the heading "Cooperation Required," which requires covered persons to cooperate to allow reimbursement by the Plan from "third parties," creates ambiguity. Simply, he argues that it is ambiguous because the Plan allows recovery of "any judgment" while the "Cooperation Required" section only discusses recovery "from another party."

However, the reference under the "Cooperation Required" heading only describes a participant's obligation to cooperate; it does not define the source of payments which are subject to reimbursement. The reimbursement provision in question is very broad, allowing recovery from any and all judgments and

settlements, not just third party settlements and payments. "Right to Reduction, Reimbursement, and Subrogation" and "Cooperation Required" come under separate headings, are clearly distinguished under the Plan, and have different purposes. The terms of the Plan are clear: the reimbursement provision, not the "Cooperation Required" section, describes from whom the Plan Administrators may recover. Thus, Mr. Willard's arguments that the Plan is ambiguous are without merit, and we find that the Plan Administrators have a clear right to the funds in question.

### c. Possession and Control of the Funds

The final factor also favors the Plan Administrators. In <u>Great-West</u>, as in this case, the plan fiduciary paid benefits and sought reimbursement of those benefits pursuant to a provision in the plan. 534 U.S. at 207. After disposing of the fiduciary's claims for reimbursement in the form of specific performance or injunctive relief, the Court turned to the claim that the plan fiduciary sought restitution in equity in the form of constructive trust or equitable lien. <u>Id.</u> at 213. The Court ultimately determined that equitable restitution was not an available remedy because the funds claimed by the plan fiduciary were not in the plan beneficiary's possession, but rather were placed in a Special Needs Trust, as required by California law, and a client trust account. <u>Id.</u> at 214. Thus, Mr. Willard argues that the funds must be in the defendant's possession for a

reimbursement claim to be considered equitable. Aplt. Br. at 14-16.

Similarly, Mr. Willard analogizes the instant case to Bauhaus, in which the disputed funds had been deposited in the state court's registry while the parties contested ownership in federal court. Aplt. Br. at 15. The Fifth Circuit found that the beneficiary did not have possession and control because the court was totally independent of the plan beneficiary. Bauhaus, 292 F.3d at 445. Likewise, Mr. Willard argues that the instant case is similar to Primax Recoveries, Inc. v. Sevilla, 324 F.3d 544 (7th Cir. 2003). Aplt. Br. at 15-16. In Primax, the tortfeasor settled with the plan member and made payment with a check issued to the plan member, her attorney, and Primax. Primax held the check and refused to sign it because the attorney claimed he was entitled to fees. Primax, 324 F.3d at 546. Because the plan member never held the funds in question, the court found that the suit was one for monetary damages rather than equitable relief. Id. at 547-48.

The instant case, however, is distinguishable. Although the funds in dispute are currently held by the district court, the funds were placed in the court's registry by agreement of the parties after negotiation between the tortfeasor and the victim. Importantly, unlike Bauhaus, the federal court adjudicating the rightful owner of the funds also had possession of the funds until the parties agreed that they should be distributed to the Plan Administrators.

Moreover, once the court vacated the order to distribute the funds pending trial, the funds were again in the registry of the adjudicating court. Thus, although Mr. Willard is not in physical possession of the settlement proceeds, he did exercise control over the funds and can be deemed to be in constructive possession of the funds.

This case is more similar to Bombardier, in which the court found that because the funds were "in a bank account in the name of the participant's attorneys," the plan participant had sufficient control over the funds such that the participant was in constructive possession of the disputed funds. 354 F.3d at 356. Similarly, in Varco, the Seventh Circuit determined that the funds were "in the control of a Plan participant due to the fact that [the beneficiary's attorney] placed them in a reserve account in [the beneficiary's] name." 338 F.3d at 687. Thus, the Varco court distinguished Great-West, and awarded the equitable relief sought. Id. at 688.

Mr. Willard also argues that Westaff (USA), Inc. v. Arce, 298 F.3d 1164, 1166-67 (9th Cir. 2002), which looked to the substance of the relief sought, dictates that we find that the action here is one for monetary relief. Aplt. Br. at 14-17. In that case, the Ninth Circuit held that a plan administrator's suit to recoup benefits paid to a beneficiary upon the beneficiary's receipt of settlement funds from a third party tortfeasor was essentially legal in nature, even though the

beneficiary had placed the funds in an escrow account in the beneficiary's name pending a determination of the rightful owner. Westaff, 298 F.3d at 1167.

We, like the Fifth Circuit, perceive that Westaff departs from the Supreme Court's opinions in Mertens and Great-West, and decline to follow the Ninth Circuit's highly restrictive view of the scope of "appropriate equitable relief" under § 502(a)(3). Bombardier, 354 F.3d at 358 n.43. After all, any equitable relief, including those forms explicated by the Court as available under § 502(a)(3), must involve the direct or indirect transfer of money, and we cannot read the statute to proscribe all forms of relief. Rather, we find that the instant case, rather than involving one for monetary damages, involves exactly the type of equitable restitution claim the Court had in mind in Great-West.

Finally, Mr. Willard argues that determining the relief sought by the Plan Administrator to be "appropriate equitable relief" under § 502(a)(3) would contravene public policy. However, Mr. Willard did not present this argument to the district court, and "we find no reason to deviate from the general rule that we do not address arguments presented for the first time on appeal." United States v. Mora, 293 F.3d 1213, 1216 (10th Cir. 2002).

Accordingly, we find that because Mr. Willard voluntarily agreed to allow Wal-Mart to withhold $534,919.38 from his tort settlement, agreed to place these funds in the court registry pending the outcome of this case, and allowed the court

to distribute the funds to the Plan Administrators pending resolution of this dispute, he exercised control over the funds in question. Thus, because all three parts of this test have been met, the Plan Administrators are entitled to restitution in the form of an equitable lien as "appropriate equitable relief" under § 502(a)(3).

B. Application of the Terms of the Plan

Finally, Mr. Willard argues that even if the language is unambiguous, Wal-Mart is not a "third party" or "another party" under the reimbursement provision because it is a "party in interest" under ERISA. However, ERISA defines "parties in interest" to ensure that the Plan does not engage in certain prohibited transactions. Thus, the fact that Wal-Mart is a "party in interest" and must abide by certain rules of separation from the Plan does not support the conclusion that Wal-Mart is not an entity distinct from the Plan. Although Mr. Willard points to many facts showing a close relationship between the Plan Administrators and Wal-Mart, including control and oversight by the company, Mr. Willard fails to establish that the two are not distinct entities for purposes of ERISA.

Thus, we find that the Plan Administrators' suit for restitution to be for "appropriate equitable relief" under § 502(a)(3) of ERISA, and the district court's judgment is therefore

AFFIRMED.