**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 15, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DONNA J. HOLLINGSHEAD,

Plaintiff-Appellant,

v.

BLUE CROSS AND BLUE SHIELD
OF OKLAHOMA, doing business as
BLUELINCS HMO,

Defendant-Appellee.

No. 05-6276

W.D. of Okla.

(D.C. No. CIV-04-1640-W)

**ORDER AND JUDGMENT**[*]

Before **TACHA,** Chief Judge, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

This case asks us to interpret an insurance plan's organ transplant policy.
The plan's express exclusion denies any benefit for transplants of "more than one
organ of the same type."  Here, Donna J. Hollingshead underwent a liver
transplant.  Unfortunately, within seventeen days, her transplanted liver failed and
she required a second liver transplant to survive.  Her insurance company refused
payment for this second transplant based on the exclusion and Hollingshead now

---

[*]  This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

seeks reimbursement. The district court denied Hollingshead's claim based on the exclusion. Because we cannot escape the conclusion that "one organ" means "one organ," we affirm.

## I. Background

Defendant Blue Cross and Blue Shield of Oklahoma (Blue Cross) is a health maintenance organization doing business as BlueLincs HMO. Hollingshead worked for the Cushing Hospital Authority, a municipal hospital, and had an insurance policy (Plan) with BlueLincs through her work. She was diagnosed with primary sclerosing cholangitis (PSC) in 1984. PSC is a progressive liver disease that results in cirrhosis and liver failure. In 2002, Hollingshead was in the end stages of liver disease secondary to PSC.

As a result of the advanced PSC, Hollingshead would have died without a liver transplant. The Plan expressly allowed a liver transplant when the claimant is facing death within eighteen months, fitting Hollingshead's condition. Blue Cross pre-approved and pre-certified the transplant and it was performed at the University of Nebraska Medical Center (UNMC) on October 20, 2002. Hollingshead was released from the hospital on October 25 in "excellent condition." Aplt. Supp. App. II at 449. Nevertheless, the new liver ceased to function effectively eleven days after her release and she received a second transplant on November 6, 2002—seventeen days after her initial transplant. Blue Cross denied coverage for this second transplant because a Plan exclusion holds

that "no Benefits will be provided for . . . [m]ore than one organ of the same type."

Hollingshead internally appealed Blue Cross's decision arguing that the October 20 surgery was not an organ transplant but instead a "failed attempt at a transplant," and that only the November 6 operation constitutes an organ transplant.[1] During Blue Cross's review, it considered a written letter by Richard Gilroy, M.B.B.S., an associate of UNMC's Organ Transplantation Program. Dr. Gilroy wrote that three percent of liver transplants do not function and a retransplant is mandatory in those situations; otherwise the patient will die. He continued, "we consider this [retransplant] part of the original transplantation process." Aplt. Supp. App. II at 485. After a review by two committees, Blue Cross affirmed the denial of Hollingshead's claim.

Hollingshead filed suit against Blue Cross in Oklahoma state court under the Employee Retirement and Income Security Act (ERISA) enforcement provision, 29 U.S.C. § 1132(a)(1)(B), which governs the Plan, to recover benefits

---

[1] Hollingshead was informed by Blue Cross that the second liver transplant would not be covered by the Plan on November 4, 2002—two days before her surgery. Aplt. Supp. App. II at 316. On the same day, Hollingshead's daughter asked for an expedited review of the decision. On November 5, Blue Cross sent Hollingshead a letter explaining the denial of the claim. On November 7, 2002, a day after the surgery, Blue Cross's appeals committee affirmed the denial of the claim. A second appeals committee also reviewed and affirmed the denial of the claim.

for the second liver transplant operation. Blue Cross removed the case to the U.S. District Court for the Western District of Oklahoma.

Blue Cross filed a motion for judgment on the administrative record and the district court decided that the insurance plan unambiguously excluded coverage for more than one organ of the same type. Accordingly, the district court denied relief to Hollingshead and entered judgment for Blue Cross.

Hollingshead appeals the district court's order.

## II. Analysis

The question on appeal is whether the Plan is ambiguous. If it is, Hollingshead makes four related arguments under ERISA that would provide coverage for her second transplant:

(1) an entire body of Oklahoma insurance law is preserved under ERISA's "savings clause," and this saved state insurance law trumps the terms of the Plan document, requiring coverage for the second surgery;

(2) the Tenth Circuit has already issued a decision "saving" a principle of Oklahoma insurance law, showing that state common law principles of insurance interpretation and application are to be applied in ERISA cases;

(3) Blue Cross did not carry its burden to support its denial of benefits with substantial evidence, as required of an administrator operating under an inherent conflict of interest, and its denial was therefore arbitrary and capricious; and

(4) federal common law mirrors state insurance law, and requires coverage in this case.

Hollingshead further maintains that Blue Cross's interpretation of the Plan is not reasonable because the second liver transplant was within the known failure rate of initial liver transplants, within the "standard of care" for liver transplants, deemed by the medical community to be part of the initial transplant, and required for her to live.

Blue Cross contends that since the second organ exclusion is unambiguous, we need not reach these questions of contract interpretation under state law.

**A. Standard of Review**

We review the grant of summary judgment de novo, applying the same standards as the district court. *Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1002 (10th Cir. 2004) (per curiam). "It is a basic rule of insurance law that the insured carries the burden of showing a covered loss has occurred and the insurer must prove facts that bring a loss within an exclusionary clause of the policy." *Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1298 (10th Cir. 2000).

"[A] denial of benefits challenged under § 1132(a)(1)(B) [ERISA] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Fought*, 379 F.3d at 1002–03 (quoting *Firestone*

*Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)); *see also Geddes v. United Staffing Alliance Emple. Med. Plan,* 469 F.3d 919, 923 (10th Cir. 2006); *Adamson v. UNUM Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006). In such case, the court "applies an 'arbitrary and capricious' standard to a plan administrator's actions." *Fought,* 379 F.3d at 1003. Hollingshead does not challenge Blue Cross's contention that, as the Plan's administrator, it thereby has discretion to interpret the Plan.[2]

Under the arbitrary and capricious standard, Blue Cross's interpretation of the Plan will stand if it was "reasonable and made in good faith." *Id.* Our cases require that Blue Cross's interpretation must be: "(a) as a result of reasoned and principled process (b) consistent with any prior interpretations by the plan administrator (c) reasonable in light of any external standards and (d) consistent with the purposes of the plan." *Id.* (quotation omitted). In reviewing the denial of benefits under the arbitrary and capricious standard, the court is "limited to the 'administrative record'–the materials compiled by the administrator in the course of making his decision." *Id.* (quotation omitted).

The standard of review over the denial of benefits changes when, as here, the plan administrator is under an inherent conflict of interest. *Id.* at 1003, 1006. A plan administrator is under an inherent conflict of interest when it "is both the

_____

[2] The Plan states, "BlueLincs HMO, as claims administrator, is hereby granted authority to interpret the terms and conditions of the Group Master Agreement and to determine its benefits." Aplt. Supp. App. I at 55, 110.

insurer and the administrator of the plan." *Pitman*, 217 F.3d at 1295–96. Where the plan administrator is under a conflict of interest, a reviewing court "undertake[s] a 'sliding scale' analysis, where the degree of deference accorded the Plan Administrator is inversely related to the 'seriousness of the conflict.'" *Allison v. UNUM Life Ins. Co. of Am.*, 381 F.3d 1015, 1021 (10th Cir. 2004).

When the plan administrator operates under an inherent conflict of interest, we require the administrator "to establish by substantial evidence that the denial of benefits was not arbitrary and capricious." *Fought*, 379 F.3d at 1005. In such a case, "[t]he district court must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest." *Id.* at 1006.

We now turn to Hollingshead's appeal with this framework in mind.

**B. Is the Plan's Language Ambiguous?**

Under even the most exacting standard of review, Blue Cross's decision to deny Hollingshead's claim must be affirmed because of the Plan's unambiguous terms. We have held that where an employee benefit plan's written terms unambiguously govern what benefits are due "under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B), they are determinative as a matter of law. *Admin. Comm. of the Wal-Mart Assocs. Health & Welfare Plan v. Willard,* 393 F.3d 1119, 1123 (10th Cir. 2004) ("In interpreting an ERISA plan, the court examines the plan

documents as a whole and, if unambiguous, construes them as a matter of law."). In this case, if the Plan's terms clearly, plainly, and conspicuously dictate a certain outcome, Blue Cross could not be arbitrary and capricious in following that direction.

In reviewing the terms of the Plan, we find no ambiguity in its organ transplant provisions. "Ambiguity exists when a plan provision is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term." *Willard,* 393 F.3d at 1123 (quotation omitted). In construing the terms of an ERISA plan, language is given "its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean." *Id.*

The Plan provides, in relevant part,

c. Liver Transplants.
Benefits will be provided for a liver transplant, provided the Subscriber:
1) has end-stage liver disease with a life expectancy of 18 months or less due to any of the following conditions: . . .
c) primary scherosing cholangitis; . . .
2) has normal kidney function;
3) has no concurrent extrahepatic malignancy (including extrahepatic extension or primary hepatocellular carcinoma, HIV infection or AIDS; and
4) is psychologically stable and has a supportive social environment.

* * *

1. In addition to the Exclusions set forth elsewhere in this Contract/Agreement, *no Benefits will be provided* for the following

-8-

organ or tissue transplant or Bone Marrow Transplants or related services: . . .

h. *More than one organ of the same type*, with the exception of a double-lung transplant done at one time. A heart-only, lung-only, or heart/lung transplant will be considered the same type organ.

Aplt. Supp. App. II at 289–92 (emphasis added).

We find the exclusion is not reasonably susceptible to more than one interpretation, and no uncertainty exists as to the meaning of any term. The clause providing "no Benefits will be provided for the . . . organ . . . transplant [of]. [m]ore than one organ of the same type" unequivocally means that Hollingshead is entitled to payment of only one liver transplant.

Hollingshead offers no convincing rebuttal to the plain meaning of the exclusion. Instead, she suggests that the "insurance contract is supposed to be read as a whole" and that the Plan "made the liver transplant a covered loss." Aplt. Reply Br. at 1. By this argument, Hollingshead implies that the Plan entitles her to a *successful* liver transplant. But that is not how the policy reads and, under general contract law principles, "words cannot be written into the agreement imparting an intent wholly unexpressed when it was executed." *Blair v. Metropolitan Life Ins. Co.*, 974 F.2d 1219, 1221 (10th Cir. 1992).

We are strained to find any ambiguity in the policy's language. According to Webster's Third New International Dictionary, to "transplant" means to "to transfer (an organ or tissue) from one body or part of a body to another." Under this definition, Hollingshead received a transplant on October 20, 2002 when her

-9-

liver was removed and a donor's liver was transferred in its place. The surgery received on November 6, 2002 would constitute a new, second transplant. Furthermore, it is incontrovertible that Hollingshead received an "organ of the same type" on November 6 as it was also a liver transplant.

We are aware that the October 20 transplant failed prematurely leaving Hollingshead no choice but to undergo the second surgery. We commiserate for her unfortunate situation. Nevertheless, the Plan recognizes organ failure as an unavoidable possibility with transplant surgery and specifically contracts around it. As Hollingshead concedes, liver transplants have a known failure rate of around three percent. The Plan contemplates this failure rate and unequivocally denies claims for these additional transplants. After all, the only cognizable reason for the Plan's exclusion is to disclaim coverage in these few cases of organ failure.

Additionally, under the Plan, transplants are only authorized if the recipient can demonstrate optimal transplant conditions. For example, the Plan requires the patient to have (1) normal kidney function, (2) no concurrent extrahepatic malignancy, and (3) a psychologically stable and supportive social environment. These conditions support the conclusion that Blue Cross intended to give beneficiaries only one opportunity for the same organ transplant.

If the Plan wished to approve more than one liver transplant, Blue Cross certainly knew how to construct such a term. The Plan specifically crafts an

-10-

exception to the exclusion for a "double-lung transplant done at one time." Accordingly, the Plan does not prevent coverage for both lungs to be replaced in the event of a double-lung transplant failure. No such exception exists for liver transplants.

Finally, while some members of the medical community may consider a second, early re-transplantation of a new liver part of the original transplant, we read the Plan's language under common parlance, not medical lexicon. *See Willard,* 393 F.3d at 1123. "One" organ cannot mean "two" organs in ordinary usage.

Accordingly, the record makes clear that Hollingshead received "[m]ore than one organ of the same type" and so Blue Cross's decision to exclude coverage for the second transplant was supported by substantial evidence and its denial of her claim was reasonable. *Fought*, 379 F.3d at 1003. Although we have deep sympathy for Hollingshead's predicament, unfortunately the law precludes us from granting her relief.

## C. ERISA's Saving Clause

Because we hold that the Plan's terms unambiguously deny coverage for more than one liver transplant, we need not address Hollingshead's argument regarding ERISA's savings clause.

### III. Conclusion

For the foregoing reasons, we AFFIRM the order of the district court.

Entered for the Court,

Timothy M. Tymkovich
Circuit Judge