**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 19, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

WENDY MOON,

    Plaintiff - Appellant,

v.

TALL TREE ADMINISTRATORS, LLC;
MOUNTAIN VIEW HOSPITAL, LLC;
MOUNTAIN VIEW HOSPITAL
EMPLOYEE BENEFIT PLAN,

    Defendants - Appellees.

No. 18-4034
(D.C. No. 1:16-CV-00125-CW)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BACHARACH**, and **EID**, Circuit Judges.
_____

Appellant Wendy Moon challenges a denial of health benefits under ERISA,

29 U.S.C. § 1001 *et seq.* Defendants are Mountain View Hospital, Moon's employer;

the Mountain View Hospital Employee Benefit Plan (the "Plan"); and Tall Tree

Administrators, LLC, the claims administrator for the Plan (collectively,

"Defendants"). Moon acted as a surrogate in two pregnancies, one in 2013 and one

in 2015. She was denied health insurance coverage for the 2015 pregnancy based on

a policy provision excluding "[n]on-traditional medical services, treatments and

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

supplies which are not specified as covered under this Plan, including, but not limited to pregnancy charges acting as a surrogate mother." App. at 473.[1] Defendants had previously covered Moon's expenses for the 2013 pregnancy, but at that time, Defendants were unaware Moon was acting as a surrogate. *Id.* at 106. The district court granted summary judgment to Defendants, holding that the Plan unambiguously excludes all medical coverage related to surrogate pregnancy. Moon contends the exclusion is ambiguous and argues that it should be interpreted to exclude only *non-traditional* medical services related to surrogacy. We agree with the district court and affirm.

I.

Moon is a participant in the Mountain View Hospital Employee Benefit Plan. The Plan is a self-funded group health care benefit plan governed by ERISA. App. at 103. At all relevant times, the terms of the Plan were set forth in a summary plan description. *Id.* at 104, 441–509. The Plan covers pregnancy. *Id.* at 456–57. But it also contains an exclusions section, which excludes, among other things, services "[n]ot specified as covered." The pertinent exclusion ("Exclusion 31") reads:

> **31.  Not specified as covered.**  Non-traditional medical services, treatments and supplies which are not specified as covered under this

---

[1] Defendants' assert, and Moon does not contest, that portions of the Appellant's Appendix contain material that was not part of the record below (specifically, pages 157–355 and 359–73) in violation of Fed. R. App. P. 10(a). *See* Aple. Br. at 4. Accordingly, we limit our reference, and citations herein, to only those portions of the Appendix that comply with Rule 10(a): pages 1–156, the district court record; and pages 356–58, and 374–784, of the joint stipulated administrative record.

Plan, including, but not limited to pregnancy charges acting as a surrogate mother.

*Id.* at 473.

In March 2011, Moon called Tall Tree Administrators ("TTA") to ask whether surrogate maternity was covered. She does not dispute that she was told her policy did not cover such claims. *Id.* at 105, 783.

Despite this clarification, Moon subsequently acted as a surrogate twice. The first time, in 2013, Moon submitted claims to TTA for her pregnancy-related expenses. *Id.* at 106. TTA authorized coverage under the Plan, but there is no evidence that Defendants knew Moon was acting as a surrogate. *See id.* In 2015, Moon again agreed to act as a surrogate.[2] *Id.* This time, TTA denied coverage under the Plan for Moon's pregnancy-related claims because surrogate pregnancy expenses were excluded from the Plan's coverage. *Id.* at 107, 374–90, 728–82.

Moon appealed the denial of benefits but received no response. *Id.* at 61. Turning to federal court, Moon sought a judgment that Defendants were responsible for her 2015 pregnancy-related medical expenses.[3] *Id.* at 12–14. The parties cross-moved for summary judgment. The district court held a hearing on the two motions, after which the court ruled from the bench that Exclusion 31 unambiguously

---

[2] It appears that Moon might have become pregnant in November 2014. *See* Aple. Br. at 7 (referring to "the surrogacy performed between November 14, 2014 and July 14, 2015"). To avoid any confusion, however, we will follow the parties' convention and refer to the second surrogate pregnancy as "the 2015 pregnancy."

[3] Moon does not pursue claims related to the 2013 pregnancy on appeal.

excluded coverage for surrogate pregnancy. *Id.* at 153–54. At the hearing, the district court explained at multiple points that it had thoroughly considered the parties' briefing and the administrative record. *Id.* at 128, 146, 152. The district court later issued a short, written order granting Defendants' motion "for the reasons stated on the record." *Id.* at 121.

## II.

We review a district court's grant or denial of summary judgment de novo, applying the same standards as the district court. *Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1295 (10th Cir. 2000). The district court below also reviewed Moon's claimed denial of benefits de novo because the parties agreed the de novo standard applied.[4] *See* Aplt. Br. at 13; Aple. Br. at 10. On appeal, the parties agree that review is de novo. *Id.*

"In interpreting an ERISA plan, the court examines the plan documents as a whole and, if unambiguous, construes them as a matter of law." *Admin. Comm. of Wal-Mart Assoc. Health & Welfare Plan v. Willard*, 393 F.3d 1119, 1123 (10th Cir. 2004) (citation omitted). "Ambiguity exists when a plan provision is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term." *Id.* (quotation marks and citation omitted). We give the plan language "its common and ordinary meaning *as a reasonable person in the position of the* [] *participant,* not the actual participant, would have understood the words to mean."

---

[4] The "primary basis" for de novo review before the district court was that TTA failed to respond to Moon's appeal of the denial of benefits. Reply Br. at 12.

*Blair v. Metro. Life Ins. Co.*, 974 F.2d 1219, 1221 (10th Cir. 1992) (emphasis in original) (citation omitted).

A.

Moon argues at length that the district court did not conduct a "full de novo review" of her claim because it did not explicitly consider her proposed construction of the exclusion. Aplt. Br. at 13–14. This argument can be quickly set aside. As Defendants point out, the district court *did* indicate at the hearing that it had considered Moon's argument. *See* App. at 146, 152; *see also id.* at 128 ("I have looked quite carefully at the language, I have looked carefully at your briefs . . . ."). The district court ultimately determined that the policy exclusion was *not* ambiguous, *id.* at 153–54, which was sufficient to grant Defendants' motion, and necessarily a rejection of Moon's argument that the exclusion was ambiguous.

The district court is not required to address, in-depth, every argument for and against summary judgment. And further, Moon cites no authority for the proposition that the district court's alleged failure to undertake a detailed analysis itself merits reversal. *See* Aplt. Br. at 13–14. The district court's holding that the policy exclusion was not ambiguous was sufficient to "disclose the district court's reasons" for its decision and create a record for appellate review. *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1081 (9th Cir. 2000) ("A summary judgment order that fails to disclose the district court's reasons runs contrary to the interest of judicial efficiency by compelling the appellate court to scour the record in order to find evidence in support of the decision." (internal quotations, brackets, and citation omitted)); *see*

*also* Fed. R. Civ. P. 56(a) ("The court should state on the record the reasons for granting or denying the motion [for summary judgment]."). We therefore conclude Moon's argument on this point is unavailing.

B.

Turning to the merits of the district court's decision, we agree that the language of Exclusion 31 is unambiguous.

Moon argues that "[t]he ordinary reader could interpret the provision to mean that during a surrogate pregnancy the plan will exclude coverage for *non-traditional* medical services and treatments." Aplt. Br. at 18 (emphasis added). "[*T*]*raditional* medical services and treatments incurred during surrogate pregnancies," on the other hand, "would be covered by the Plan." *Id.* at 18–19 (emphasis added). In other words, Moon argues that the clause referring to "pregnancy charges acting as a surrogate mother" merely clarifies that non-traditional medical services are not covered even during surrogate pregnancy.

Conversely, Defendants contend that surrogacy is a subtype of "non-traditional medical services." Aple. Br. at 11. They argue the phrase "pregnancy charges acting as a surrogate mother" clarifies that medical expenses related to surrogacy are classified as "non-traditional medical services." *Id.* at 11–12. Under Defendants' reading, all charges related to surrogate pregnancy are excluded by the Plan.

Moon appears to concede that Defendants' interpretation is a reasonable one, but argues her interpretation is also reasonable, so therefore the plan is ambiguous. We conclude, however, that Exclusion 31 is not susceptible to Moon's proposed

6

interpretation, and that the plan is therefore "not susceptible to more than one meaning." *Admin. Comm. of Wal-Mart Assoc. Health & Welfare Plan*, 393 F.3d at 1123.  Accordingly, we agree with the district court that the provision is unambiguous.

The language of the exclusion does not support Moon's reading.  The phrase "pregnancy charges" suggests that *all* "charges" related to pregnancy incurred while "acting as a surrogate mother" are excluded from coverage, not just non-traditional charges as she contends.  Additionally, the structure of the exclusion supports Defendants' reading: it begins by stating what is not covered—non-traditional medical expenses—and then clarifies that these "include[] but [are] not limited to" "pregnancy charges acting as a surrogate mother."  The phrasing explains that "pregnancy charges acting as a surrogate mother" are a group of excluded claims housed within the larger category of excluded "non-traditional medical expenses." Consequently, a reasonable person in the position of the participant would view "pregnancy charges acting as a surrogate mother" as an example of a non-traditional medical expense.

By contrast, Moon's reading would require that words be read into the phrase specifying that only non-traditional medical expenses related to surrogacy are excluded, rather than all expenses related to surrogacy.  More specifically, in order not to read the language to refer to all expenses related to surrogacy, one would have to read the phrase as excluding "[n]on-traditional medical services . . . including, but not limited to, [*non-traditional*] pregnancy charges acting as a surrogate mother."

7

App. 473.  In sum, language would have to be added to the provision to counteract its natural reading in order to create the ambiguity Moon proposes.  We do not, as a matter of interpretation, add language to a provision.  *Feaster Trucking Serv. Inc. v. Kindsvater, Inc.*, 460 F.2d 180, 182 (10th Cir. 1972) ("[A]dditional words cannot be read into [an] agreement . . . ." (citation omitted)").  We decline to do so here.

In sum, Moon's interpretation of Exclusion 31 is not reasonable, and Moon has not raised any other interpretation that would render the provision ambiguous.[5]  We therefore hold that Exclusion 31 unambiguously excludes coverage for any medical expenses related to surrogate pregnancy.

### III.

For the foregoing reasons, we AFFIRM the district court.


Entered for the Court


Allison H. Eid
Circuit Judge

---

[5] Because we hold the exclusion is unambiguous, we do not reach Moon's arguments related to the doctrine of *contra proferentem* and the parties' prior dealings, or Defendants' alternative argument concerning the Plan's exclusion of coverage for "occupational activities."